We'll hear argument now in the case of Grinnell Mutual Reinsurance Company against S.B.C. Flood Waste Systems. Good morning, Your Honors, my name is Edward Joyce, together with Jennifer Daugherty we represent the appellants. This appeal turns on whether Flood, Inc., a non-insured, was an alter ego of S.B.C. Flood Solutions, Inc., the only insured party in this matter. I think it's significant that the defendants chose, I'm sorry, the plaintiffs chose to sue a group of non-insureds, including specifically Flood, Inc., so in any event, the only insured here is S.B.C. The only way an individual could be an insured would be if S.B.C. asked them as an employee to do something for S.B.C. That never happened. Everything they're complaining about occurred before S.B.C., in fact, was incorporated. It's also interesting that we deposed all of the employees of Grinnell who in any way were related to the issuance of these insurance policies, and none of them had a clue. They had no idea why rescission was sought, they had no idea why a deck action was filed, and none of them reviewed the deck action before it was filed. None of them were, they were all confused somewhat by the fact that Grinnell did not wait until the insured filed an answer to a complaint that was filed, the complaint being what it would cause them to be a claim, okay? Along those lines, Mr. Joyce, you said in your opening brief with respect to Ms. Fass, Fass also testified at her deposition that assuming Flood, Inc. was not owned by S.B.C., she was not sure why there had to be any disclosure of the Flood, Inc., Flood Brothers business dispute, which is what Grinnell's declaratory judgment action focused on as a reason to void S.B.C.'s Grinnell insurance policies, citing pages 110 and 111 of her deposition. I didn't see her. It was an aggressive argument. You don't, it borders right on misrepresenting her testimony. I think it was a fair argument, Your Honor. When we took her deposition and showed her the Flood Brothers complaint and went through all the paragraphs that were incorporated by reference by Grinnell in her deck action, she acknowledged she had no idea why there would be a lawsuit. Could you quote her language? I cannot. I can, and she did not testify as you'd set forth in your brief. I'm sorry, sir. I thought we were making a fair analysis of her testimony. So the undisputed testimony here is that Sean Flood and Chris Flood, who had been employees of Flood Brothers garbage company, received telephone calls from people who wanted service at a point in time when S.B.C. was not able to provide service because they had no trucks. So these two salesmen, hoping to preserve a future relationship, decided to try and refer that business to Flood Inc., a company that had been in business since 2014 and had been doing work that Flood Brothers did not want to do. That relates also to an argument that was made by Grinnell, which is that Flood Brothers had accused Flood Inc., and specifically Chris, of stealing from Flood Brothers, and this was something that should have been disclosed in the application. Grinnell later acknowledged there was no suggestion or basis for a charge that they were stealing. The only argument, the only Counsel, wasn't there also a dispute over the name and an exchange of letters, including one for settlement purposes? Is that not a prior claim? I know of no settlement letters that were sent before this case, before the DEC action was filed. In fact, the only argument here about the name was that some of the officers of Flood changed the name to Flood Inc., so it wouldn't be, they claimed they owned the name Flood Inc. This all occurred before there was an SPC, so this was not a request or a demand for SPC to change its name. SPC sought advice of counsel and was advised the name they were using would not infringe any rights that Flood Brothers had. Mr. Joyce, do you think we need to decide the question of alter ego status here? The reason I ask that is because, frankly, that question looks fairly messy, factually. It's the only way, I'm sorry, Your Honor, for interrupting you. But, if I could continue, I thought the more general point that Grinnell was making is that there were key questions in the application for insurance that were answered falsely as to material matters, and that's sufficient for rescission. Your Honor, I think you absolutely have to decide the issue of alter ego. If Flood Inc. was not the alter ego of SPC, then SPC was not engaged in business before it had insurance. That's not a question of Flood Inc., it's a question of the SPC flood principals who were answering the questions, and there were plenty of shots across the bow in October and December of 2017. And those shots, there were two, there was one meeting attended by Brian Flood and Chris Flood, and members of Flood Brothers' management, where they complained about use of the name. They never complained about thievery or stealing business. So that was a complaint that Flood Brothers thought Flood Inc. should not use its name. To go back to your initial question, the only way that SPC could have been in business before it acquired insurance would have been if Flood Brothers was its agent or alter ego and was doing business on its behalf. It would be a very strange relationship where the agent determines who it will serve, how it will serve, does all the billing, and keeps all the money. It's a pretty strange agency. So, I think the biggest problem here with their case is, was Flood Inc. an agent, I'm sorry, an alter ego, and was there an occurrence that required disclosure? The only occurrence they point to is the fact that Flood Brothers wanted Flood Inc. to change its name. How did that have anything to do with SPC that wasn't even in business at that time? So, the other interesting thing is that none of this alter ego issue came up until after all the discovery was done, and then Grinnell elected to supplement its interrogatory answer. We asked the court to depose the person who signed the new interrogatory answer, and the trial lawyer said, you know, don't bother, he knows nothing about this. These facts were based on our research. So, we asked the court to depose the trial counsel. The court said, no, that'll all be hearsay, it'll never get in. Well, that's what Fass relied upon in her affidavit. Without her affidavit, there's really no issue here of Grinnell not offering insurance or not providing insurance to these people. And what's your problem with what she said in her affidavit? I think in her affidavit, she is assuming facts as true, which are not true. Where? When she, well, I can't pull it out in front of me, but when she talks about the fact that flood ink was controlled, I'm sorry, SPC was controlled flood ink, it's not true. It's not true that SPC did business through flood ink. Sorry, where does she say flood ink was controlled by SPC? I think she's, okay, I'm just going through front to back my notes on the affidavit, but she starts out, which is not the question you asked, I understand, by talking about the meetings that occurred in February, in March of 2017. I'm asking specifically where she made a comment about the ownership of flood and SBC flood. Paragraph 17, SPC did not disclose that from December 2017 until March of this year, the end of February 2018, it had engaged in substantial business activity prior to submitting the application and while uninsured, including submissions of proposals, et cetera. This refers specifically to what flood ink was doing, not SPC. My question was specific, after our discussion about your representation of Ms. Fass' deposition testimony, I want to focus in on exactly what you were saying she said. That's why I was asking the question. I understand, Harvey. So at paragraph 22 of her affidavit, she says in the CGL application, SPC did not disclose flood ink, a company operated by some of the same individuals as SPC, did not disclose that SPC was using flood ink to carry on SPC's business, including service customers. Well, the fact is that the only person who owned, the only defendant who owned flood ink was Chris. There's no evidence to that. Owned or operated? Owned. She says operated, right? I'm sorry, Harvey. Well, okay. The company operated by some of the same individuals, did not disclose that SPC was using flood ink to carry on SPC's business. The two people who were operating flood ink were Chris and Sean, and either of them were owners, officers, or directors of SPC. They became shareholders of SPC about a week before the insurance application became effective. So, I interpreted her comments, her statements in the affidavit as indicating that flood ink would be an alter ego, and therefore, it should have been disclosed. Counsel, in addition to the record, you, citations that you just went over, the, your brief on 29, and you're talking about Judge Weinweber's decision here, each of these findings was in the district court's conclusion that flood ink was the alter ego of SPC. And I think you're answering Judge Hamilton's questions to say we need to decide that. I think you do. And let me read what Judge Weinweber said, aside from the falsities related to an unreported alter ego relationship, comma, the record contains other falsities. Well, he said that, but I'm not sure what they were. I don't know of no other falsities. For example, after the fact, he talked about the fact, well, you said you were going to start a business March 1st, 2018, and you started on February 12th. Testimony from the employees of Grinnell was that's irrelevant. He had insurance on February 12th. There was testimony that they hired some potential drivers before they went into business, and the testimony of the Grinnell employees was that's also irrelevant. They weren't driving. They were being hired to be available to drive once insurance was there. So those were not falsities in the application. If they were falsities, they were irrelevant falsities in terms of testimony of Grinnell's employees. Your Honor, I've sort of lost track of my time. I want to reserve five minutes for rebuttal. You have a minute and a half left. Thank you very much. So I think the real problem here is that— Mr. Joyce, you have a minute and a half left in the total. Oh, can I sit down? You may. Thank you. Mr. Vandervliet. Good morning. May it please the Court, Joel Vandervliet. On behalf of Grinnell Mutual Reinsurance Company, there was some questioning in the argument about whether the Court needs to decide the alter ego issue. It's our position that Judge Lyon-Weber correctly decided the alter ego issue, but it is not necessary to decide that issue because Judge Lyon-Weber also concluded correctly that the dependence to disclose claims and occurrences that could give rise to claims in the insurance application was an independent misrepresentation regardless of the relationship between Flood Incorporated and SPC Flood Waste. And I think Judge Kohler alluded earlier to a meeting that Brian Flood had with Flood Brothers Senior Management where they took issue with the name of Flood Incorporated as well as cease and desist letters that Flood Brothers sent to two of the defendants, both Brian Flood and Chris Flood in connection with that company, Flood Incorporated. And the issue was both the name of the company and the nature of the company, that it was a waste hauling company, recycling company that competed according to Flood Brothers improperly with Flood Brothers, that defendants used that company or rather specifically that Chris Flood used that company to steal business or steal customers, divert business opportunities from Flood Brothers improperly. Now, counsel argues that the only issue was the name. There were no allegations of stealing business or any of that sort. We pointed out a couple in our brief. One was that defendants admitted in their answer in the underlying lawsuit filed by Michael Flood and Vice President Bob Flood claimed that Flood Incorporated was stealing Flood Brothers' business at that meeting that they had with Brian Flood. And the second instance that we pointed out, and there's others in the record, but the second one we pointed out in our brief was that after Chris Flood was fired from Flood Brothers, he visited Mike Flood, a shareholder and I suppose the patriarch of the Flood Brothers company and family, to ask him about the accusations of stealing. And that was Chris Flood's testimony, Defendant Chris Flood. To be clear, nobody's making any accusations of theft of property or money. It's just about competition. Correct. Correct. That's correct. With rather proprietary attitudes toward customers. That's correct. That he was operating a company using the same name. And you all are not, were never suggesting, as I understand it, that any of the business methods in question here were illegal. Simply that they were likely to lead to litigation among this extended family. That's correct, Your Honor. So that they were claims or at the very least occurrences that could give rise to claims against the defendants for doing exactly what Flood Brothers was complaining about, which was they formed a new company using the Flood name. So what do we make out of those quotation marks in the letter around Flood, Inc.? The defendants are telling us as long as we called ourselves Flood LLC or SBC Flood, there was nothing to worry about. I don't think that's a credible argument, Your Honor. I don't know that the, I don't see why the combination of Flood with the common business name incorporated makes that any difference. It's clear the part of the name that's at issue here is Flood. And that was recognized as well by Brian Flood shortly after they incorporated the new company when he consulted with counsel about the name of the company and the logo and was advised that it's important that the word Flood not jump out of the logo and that the initials SBC are not tiny in comparison. I think it's clear that they were aware that there was an issue with Flood Brothers and the potential for litigation. As far as the materiality of the misrepresentations and failure to disclose the claims and occurrences that could give rise to claims, this court's repeatedly held that materiality can be established as a matter of law on summary judgment by the testimony of an underwriter. Talked earlier about Ms. Fassa's testimony and counsel was unable to identify what parts of that testimony they argue are based on hearsay. It's important to note this entire hearsay objection was raised for the first time on appeal. So it's our position, it's waived. But it's frivolous in any event. As I said, counsel couldn't identify any particular facts that they object to as hearsay and there's no evidence that, as he put and they put it in their brief, that outside counsel provided facts to Ms. Fassa. And that's their principal materiality argument. Their other arguments are that Ms. Fassa's affidavit contradicts the testimony of other Grinnell employees that was first waived on their motion for reconsideration and waived as a matter of law. It's also meritless. As Judge Hamilton observed, she did not testify that the claims didn't need to be disclosed. In her testimony, she simply asked for a question to be rephrased. Counsel didn't, because she didn't understand, counsel didn't do that. If I could turn to the alter ego argument, well, there are, it is factually dependent. I don't think it is terribly factually messy. Judge Linen-Weber's ruling on the issue is well supported by the facts. Sean and Chris Flood solicited business on behalf of SBC Flood, they sent bids and proposals on behalf of SBC Flood, they signed contracts on behalf of SBC Flood, and then they had to work for those contracts. So as Judge Linen-Weber found, they used the two companies interchangeably depending on their needs. Defendant's principal argument against, their principal argument that that ruling is an Sean and Chris Flood merely used SBC contracts because they didn't have form contracts for Flood Incorporated. That's not a fact issue, there's simply no legal basis for that argument. Contracts as a matter of law say they're SBC contracts, they have the SBC logo, they define SBC Flood as the contractor, there's no mention of Flood Incorporated, there's no ambiguity in the contracts, none has been alleged. So you look at the four corners under well established law, there's no resort to extrinsic or parole evidence, there's no reason to resort to undisclosed or subjective intent of defendants in entering those contracts. On their face, SBC Flood is the contracting partner. And we've offered several other reasons why that argument fails, but you don't need to go beyond the four corners of the policy. I'll just note that Sean and Chris Flood, the people who signed the contracts, themselves testified that they were contracts on behalf of SBC, not Flood Incorporated. Mr. Van Der Vliet, I understand why Grinnell would be very troubled by the failure to disclose the occurrences likely to and that eventually did give rise to litigation. I guess I have, it's less obvious to me why it was so important to Grinnell just how SBC Flood began its business as it was getting set up and the way that Sean and Chris managed those contracts. Sure, Your Honor. I think you're asking about what, about materiality. Why do you care? Exactly. Yeah. And why were the various misrepresentations about the business start date, that it was a new venture, that drivers were hired? I understand, I mean, the reason, this is one of the reasons I think this is messy. Drivers are hired, but when do they actually start driving for SBC Flood? Well, yeah, I mean, it's the totality of these different answers. That sounds messy to me. Sure. So why, apart from the litigation threats, why did you care? Well, essentially two reasons, two red flags that were not disclosed. One is that all the work that was being done was being subcontracted and Grinnell does not insure paper contractors, contractors who don't actually do the work. And all of that work during the time period we're talking about was subcontracted through flooding. But when did the insurance take effect? Insurance took effect in February. February 12th or so, right? Correct. Yeah. Okay. But we're talking about the time period, the two or three months before that. The other red flag was that this activity was being undertaken uninsured. And that's a big red flag. It's evidence of generally poor business management. It's also evidence of irresponsible risk management. And this was already, as Ms. Foss articulates in her affidavit, this is already a higher risk class of business in Grinnell's view, the waste hauling business in general. So I hope that answers your question as to why we cared. And I'll also point out, I don't think defendants really dispute those issues on the, you know, materiality on the merits. Generally, as far as the materiality, their arguments really this, the hearsay argument that's not supported and has been waived and their insistence on the no alter ego point. I think that's all I have, unless there's any further questions. Thank you, counsel. Anything further? Mr. Joyce. I do. I want to use that minute and twenty-seven seconds to walk through the report. So there is the suggestion in the Foss affidavit that SPC neglected to disclose there was a claim of competition, and there was no claim of competition that preceded the formation of SPC. There was never a claim that flooding competed. During her deposition, she testified that she understood that SPC, which was owned by people who were in the refuse business, would be competing with other companies in refuse business in the general area of Chicago. In the credit report she ordered, she knew that Brian Flood, one of the defendants here and an employee of SPC, worked for Flood Brothers. So Grinnell knew that SPC would be competing with Flood Brothers. That doesn't seem to be something that is very relevant. You never sell any insurance to people who start a new company, but they're getting insurance in the event they do get service. No. What would be relevant is if other people using the Flood name in the same business have indicated they think that it's not properly usable in competition against them. Your Honor, I wish I could give you the exact number, but I believe that the record shows there are 400 companies in Illinois using the name Flood. In Chicago, in the waste refusal, waste disposal business? No. Other companies just using the name Flood. Thank you, counsel. Just can I make one quick comment? Thank you, counsel. Thank you, Judge. The case is taken under advisement.